IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

HUMAN RIGHTS DEFENSE CENTER                                    PLAINTIFF

v.                          Case No. 1:17-cv-1064

UNION COUNTY, ARKANSAS, *et al.*                               DEFENDANTS

**ORDER**

Before the Court is Plaintiff's Motion for Summary Judgment. ECF No. 54. Defendants have responded. ECF No. 60. Plaintiff has replied. ECF No. 62. The Court finds the matter ripe for consideration.

**I. BACKGROUND**

Plaintiff Human Rights Defense Center ("HRDC") is a non-profit organization that seeks to educate the general public and imprisoned individuals on various topics related to the prison system. In this effort, Plaintiff creates and distributes multiple publications, such as the magazines *Prison Legal News* and *Criminal Legal News*, as well as legal self-help books such as *The Habeas Citebook: Ineffective Assistance of Counsel*. Plaintiff has delivered its publications to correctional facilities in every state.

Defendant Union County, Arkansas operates the Union County Detention Center ("UCDC"). The UCDC houses a mixture[1] of mostly pre-trial and pre-sentence detainees, with some additional prisoners serving time in the UCDC as ACT 309[2] inmates. Defendant Sheriff Ricky Roberts ("Roberts") is the ultimate policy maker for the UCDC and has overarching

---

[1] As of January 16, 2019, the UCDC held 176 detainees and prisoners.
[2] The ACT 309 program allows the Arkansas Division of Correction ("ADC") to house inmates in local detainment facilities to either alleviate crowding in ADC facilities or to permit localities to utilize eligible inmates for work assistance in local government projects under the supervision of local law enforcement officials. *See Jones v. Lucas*, Case No. 1:18CV00067-BSM-JTR, 2019 WL2337368 at *1 n.2 (E.D. Ark. May 7, 2019); Ark. Code Ann. § 12-30-407.

responsibility for its management and operations. Defendant Richard Mitcham ("Mitcham") is the Jail Administrator who oversees day to day management and operations of the UCDC, and Paul Kugler ("Kugler") is the Assistant Jail Administrator who aids in that management.

On March 1, 2012, the UCDC implemented a policy in which the only incoming mail that inmates would be allowed to receive would be postcards, with an exception for legal and privileged mail. The announcement of this new policy was posted on the Union County Sheriff's website, which stated that other facilities had instituted such a policy and had been successful in allowing staff to concentrate more of their efforts toward detention center operation and inmate safety. This policy is still listed as in effect on the current Union County Sheriff's website, which states that detainees may only receive 3x5" or 4x6" sized postcards as incoming mail.[3] The mail policy was modified around May 2017, in which the permissible incoming mail would be scanned and made available to inmates via electronic kiosks. Electronic tablets were added in December 2018 that also allowed the viewing of the permissible incoming mail. While the postcard policy is still listed on the Union County Sheriff's website, incoming mail to inmates in the form of letters is now scanned and made electronically available to the recipient. The Act 309 inmates are allowed exceptions to the general postcard and letter policy in that they are allowed to receive books, magazines, and newspapers while in the UCDC.

On June 23, 2017, Plaintiff mailed some of its materials in the form of books, magazines, and enveloped letters with various content to fifteen inmates housed at the UCDC. The materials were all rejected by the UCDC, with most returned to Plaintiff. All returned letters were marked "Return to Sender" with "Reason: Post Cards Only." One of the returned books was similarly labeled. None of the returned magazines had any reference to the postcard-only policy attached

---

[3] Union County Sheriff's Office, *Divisions of UCSO: Union County Detention Center - Inmate Mail* http://unioncountysheriff.net/divisions.html (last accessed September 16, 2022).

and the only markings stated "RTS" or "Refused." On April 13, 2018, Plaintiff mailed another wave of similar materials to twelve inmates in the UCDC. On April 20, 2018, Plaintiff sent follow-up letters to the same twelve inmates. None of the materials mailed April 2018 were delivered to inmates, and they were not returned to Plaintiff.

On October 30, 2017, Plaintiff filed its complaint against Defendants. ECF No. 1. Plaintiff brought claims against Defendants in their individual and official capacities pursuant to 42 U.S.C. § 1983. Plaintiff's first claim alleges violations of its rights under the First Amendment because the UCDC's mail policies violate its right to communicate with incarcerated individuals. *Id*. at p. 9-10. Plaintiff's second claim alleges violations of its Fourteenth Amendment right to due process because of the UCDC's failure to provide notice of why its mailings to inmates were rejected or provide an opportunity to appeal the rejections. *Id*. at p. 10-11. Plaintiff requests declaratory and injunctive relief against the UCDC's policies, along with nominal, compensatory, and punitive damages, and costs and attorney's fees. *Id*. at p. 11-12. On April 17, 2018, the Court entered an order granting Defendants' Motion to Dismiss (ECF No. 20) and dismissed the individual capacity claims for damages with prejudice, finding that the individual Defendants were entitled to qualified immunity. ECF No. 33.

Prior to this action, on August 21, 2017, Plaintiff filed a similar action in this Court's Harrison Division against Baxter County, Arkansas regarding the mail policies at the Baxter County Detention Center ("BCDC").[4] United States District Judge Timothy L. Brooks granted partial summary judgment to Plaintiff and Baxter County regarding Plaintiff's due process claim but denied summary judgment regarding the First Amendment claim. (Baxter: ECF No. 89). After a bench trial which addressed the merits of Plaintiff's First Amendment claim (Baxter: ECF Nos.

---

[4] *See Human Rights Def. Ctr. V. Baxter Cnty., Ark.* (W.D. Ark. Case No. 3:17-cv-3070-TLB). Further references to the docket in the Baxter County action will be referenced as "Baxter: ECF No. __."

95, 95, 96), Judge Brooks dismissed the Baxter County action with prejudice (Baxter ECF Nos. 104, 105). Plaintiff filed an appeal of Judge Brooks' dismissal and final judgment (Baxter: ECF No. 109), which the Eighth Circuit agreed to hear (Baxter: ECF No. 111). On May 30, 2019, the parties in the instant action filed a Joint Motion to Stay, arguing that the resolution of the appeal and issues in the Baxter County action could significantly impact the instant action. ECF No. 42. The Court subsequently granted the parties' motion to stay, with the directive that the parties file a motion to reopen the case within ten days of the Eighth Circuit's ruling in the Baxter County action. ECF No. 43.

On June 8, 2021, the Eighth Circuit held that Judge Brooks erred in not making a factual determination on whether the BCDC's policy resulted in a "de facto" ban on prisoners receiving Plaintiff's publications. *Human Rights Defense Center v. Baxter County Arkansas*, 999 F.3d 1160, 1165-66 (8th Cir. 2021). The dismissal of Plaintiff's First Amendment claim was vacated and remanded for further proceedings on the issue of whether the BCDC's policy constituted a de facto ban on prisoners receiving Plaintiff's publication. *Id*. at 1166. The Eighth Circuit also affirmed Judge Brooks' grant of summary judgment to Plaintiff regarding its Procedural Due Process claim for its first wave of mailings, holding that Plaintiff should have been informed as to why its four types of mailings were rejected. *Id*. at 1167-68. Upon remand, on April 6, 2022, Judge Brooks set a new trial date in the Baxter County action for September 19, 2022.[5] Baxter: ECF No. 136. The instant action was re-opened on September 14, 2021 (ECF No. 45), and the trial in this matter is set to commence on March 6, 2023 (ECF No. 73).

---

[5] A bench trial was held on September 19, 2022. Baxter County: ECF No. 149. Post-trial briefings have been submitted by the parties in that action, but as of the date of this order no final decision has been reached. Baxter County: ECF Nos. 156 and 157.

On July 5, 2022, Plaintiff filed the instant motion seeking summary judgment for its claims. ECF No. 54. Defendants responded in opposition (ECF No. 60), and Plaintiff replied (ECF No. 62). Defendants also recently moved to stay this matter, arguing that the trial upon remand in the Baxter County suit would effectively resolve the matters in this suit. ECF No. 65. The Court denied the request for a stay, finding that there were factual differences that precluded preemptive deference to the outcome of the Baxter County trial. ECF No. 70.

## II. LEGAL STANDARD

"Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Hess v. Union Pac. R.R. Co.*, 898 F.3d 852, 856 (8th Cir. 2018) (citation omitted). Summary judgment is a "threshold inquiry of . . . whether there is a need for trial—whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they reasonably may be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A fact is material only when its resolution affects the outcome of the case. *See id.* at 248. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *See id.* at 252.

In deciding a motion for summary judgment, the Court must consider all the evidence and all reasonable inferences that arise from the evidence in the light most favorable to the nonmoving party. *See Nitsche v. CEO of Osage Valley Elec. Co-Op*, 446 F.3d 841, 845 (8th Cir. 2006). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Enter. Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). The nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial. *See Krenik v. Cnty. of LeSueur*, 47 F.3d 953, 957 (8th Cir. 1995). However, a party opposing a properly supported summary judgment motion "may not

rest upon mere allegations or denials . . . but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. A party that fails to respond to any basis of a motion for summary judgment effectively waives any argument in opposition to that aspect of a motion for summary judgment. *See Department of Labor v. EJ's Cleaning Services, Inc.*, 2020 WL 1432048 at *1 (E.D. Ark. March 19, 2020) (citing *Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs.*, 558 F.3d 731, 735 (8th Cir. 2009)).

### III. DISCUSSION

#### A. First Amendment Claim

Plaintiff claims that the UCDC's mail policies clearly violate their First Amendment right to communicate with inmates and argues that the factual record supports a judgment in their favor as a matter of law. Defendants argue that the record indicates that there are material facts in dispute regarding this claim and that summary judgment should be denied.

Publishers have a legitimate First Amendment interest in communicating with prisoners and sending them their publications. *See Human Rights Defendant Center*, 999 F.3d at 1164 (citing *Thornburgh v. Abbot*, 490 U.S. 401, 407-08 (1989)). However, a restriction on the right to communicate with inmates will be permitted if the regulation is "reasonably related to legitimate penological interests." *Thornburgh*, 490 U.S. at 409 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). The test for determining the reasonableness of a regulation on communication with inmates involves the analysis of four factors: 1) "there must be a 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it"; 2) "whether there are alternative means of exercising the right that remain open to prison inmates"; 3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and 4) "the absence of ready alternatives." *Turner*, 482 U.S. at 89-91. An analysis of the four *Turner* factors is "a fact-intensive

inquiry requiring careful examination of the policies and institutions at issue in each case." *Simpson v. County of Cape Girardeau, Missouri*, 879 F.3d 273, 282 (8th Cir. 2018).

The Court will examine each factor as it relates to Plaintiff's claim.

**1. Rational Connection Between Regulation and Government Interest**

Plaintiff argues that there is no rational connection between the UCDC's mail policies and any legitimate government interest. ECF No. 55, p. 4-7. Plaintiff contends that the reason Defendants have offered for the limitation on mail, to prevent contraband, is meritless because previous decisions have determined that there is not a legitimate risk of contraband from material directly from publishers. *Id*. at p. 5-6. Plaintiff notes that they are not aware of any instances in which its publications resulted in security issues in another jail, and that Defendants are also not aware of any incidents in the UCDC caused by books or other publications. *Id*. at p. 6. Plaintiff concludes that the UCDC's policy is a de facto ban on publications that other courts have struck down and that there is no question that the policy is conclusively irrational. *Id*. at p. 6-7.

Defendants argue in their response that there are multiple legitimate interests that are furthered by the policy limiting incoming mail. ECF No. 60, p. 5-7. Defendants note that depositions of the individual Defendants revealed that the mail policy is meant to limit incoming contraband, save staff time, create efficiency, and limit fire hazards. *Id*. at p. 5. Defendants contend that the Eighth Circuit has indicated that the factual inquiry into whether a policy is a de facto ban on all publications is intensive and requires extensive fact finding that is not suitable for summary judgment. *Id*. at p. 6. Defendants also note that precedent indicates that prison officials do not bear the burden of showing that the policy will actual further the interests cited, only that there exists a rational connection between the policy and the interests cited. *Id*. Defendants

conclude that the unsettled facts in the record and the factual inquiry necessary for examining this factor should preclude summary judgment. *Id*. at p. 6-7.

In its reply, Plaintiff argues that Defendants have failed to satisfy the demands of the Local Rules and the Federal Rules of Civil Procedure in not stating which material facts are in dispute and that Plaintiff's statement of facts should be deemed admitted. ECF No. 62, p. 1-2. Plaintiff also notes that two of the justifications for the policy that Defendants put forward in their response, efficiency and preventing fire hazards, are being raised for the first time and argues that they should not be considered. *Id*. at p. 2-3. Plaintiff contends that if these justifications were presented earlier, it could have conducted a review of the UCDC mail procedures. *Id*. at p. 3 n.3.

The first factor requires determining "whether the governmental objective underlying the regulations at issue is legitimate and neutral, and that the regulations are rationally related to that objective." *Thornburgh*, 490 U.S. at 414.[6] This factor is the threshold requirement that once satisfied allows a court to balance the remaining factors to determine a regulation's constitutionality. *See Sisney v. Kaemingk*, 15 F.4th 1181, 1190 (8th Cir. 2021). "[A] regulation cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational." *Turner*, 482 U.S. at 89-90. Prison officials do not need to show that there are previous incidents justifying the policy or that the policy will actually further the interest cited, only that a rational connection between the policy and the interest exists. *See Simpson*, 879 F.3d at 279 (citation omitted); *see also Sisney*, 15 F.4th at 1191 (officials only need to show that they reasonably believed that their policy would further

---

[6] The parties do not contest the content neutrality of the UCDC's policies, and similar generally applicable restrictions have been found to be clearly content-neutral. *See Simpson*, 879 F.3d at 279. Accordingly, the Court must only determine if there is a genuine dispute as to whether the UCDC's policies are rationally related to a legitimate penological interest. *Id*.

the legitimate interest). Promoting time saving and efficiency in jail operations are legitimate penological interests. *See Simpson*, 879 F.3d at 280.

The Court finds that Plaintiff has failed to show that there is no genuine dispute as to this factor of the analysis. Defendants' response cites to deposition excerpts in which the individual Defendants cited to efficiency and time saving as interests furthered by the policy of limiting the mail accepted by the UCDC on behalf of inmates. This is a legitimate penological interest. *See id*. While the UCDC's policies now include some greater flexibility compared to its original postcard-only policy, such limitations on the type of mail received by a jail have been found to be rationally related to time savings and efficiency. *See id*. ("There is also a common-sense connection between a postcard-only policy and promoting efficiency."). Plaintiff's argument about late notice regarding the efficiency interest and the lack of an opportunity to review the mail procedures is unconvincing. Defendants' initial announcement of the postcard-only policy cited to the time savings of other facilities that had implemented such a policy, and Defendants' response cited to evidence in the record[7] in which efficiency was cited by UCDC officials as a reason for the policy. As to the opportunity to examine the mail procedures for efficiency, the UCDC only needs to show a rational connection between their policies and creating efficiency and not that efficiency is furthered by the mail policy. *See Simpson*, 879 F.3d at 279. Any lack of improvement in the UCDC's efficiency observed by Plaintiff would be irrelevant for this factor. *Id*. Accordingly, the Court finds that Plaintiff has failed to show that a reasonable fact finder could

---

[7] The Court is not persuaded by Plaintiff's argument that its statement of facts must be admitted as uncontested. It is true that Defendants did not abide by Local Rule 56.1(b) in submitting their own statement of facts. However, the Court does not find that the Federal Rules of Civil Procedure support concluding that Defendants have cited no facts in the record to contest summary judgment. The rules simply state that a party must cite to facts in the record in order to show that a material fact is genuinely in dispute. Fed. R. Civ. P. 56(c)(1)(A)-(B). Here, Defendants' response cites to the factual record and satisfies the general demands of the rule.

only conclude that this factor weighs in favor of Plaintiff's claim. Therefore, the Court must examine the remaining factors for Plaintiff's First Amendment claim. *See Sisney*, 15 F.4th at 1190.

### 2. Alternative Means of Communication

Plaintiff argues that the UCDC policies do not allow it any means by which to communicate its written speech with prisoners at the UCDC. ECF No. 55, p. 7-8. Plaintiff contends that its materials and publications cannot be reduced to a format that complies with the UCDC's restrictive policies and that its written communications with inmates is effectively banned. *Id*. Plaintiff also asserts that the UCDC does not accept donations of reading materials that could allow general access of its publications among inmates. *Id*. at p. 7. Plaintiff further contends that the legal information in its publications cannot be reduced to postcards and that communicating the information in-person or through a phone call is practically impossible. *Id*. at p. 8. Plaintiff concludes that the UCDC policies have indisputably eliminated any means by which it can deliver or communicate its publications with inmates. *Id*.

Defendants argue that it is unsettled as to whether the UCDC's policies have rendered Plaintiff without any means to communicate with inmates. ECF No. 60, p. 7-8. Defendants note that the only support for Plaintiff's assertion that its material cannot be reduced to a form accepted at the UCDC is a self-serving affidavit by the HRDC president. *Id*. at p. 7. Defendants further note that Plaintiff never attempted to contact the UCDC to determine if there was an alternate way in which Plaintiff's publications could be made available to the inmates. *Id*. Defendants contend that this lack of inquiry is significant because of the greater flexibility that now exists with the UCDC switching to electronic mail distribution and no longer applying the stricter postcard-only policy. *Id*. at p. 7-8. Defendants also contend that alternative means of allowing Plaintiff's materials to reach inmates are present, such as the publications being placed in an inmate's

personal property locker or making the publications available for purchase through the jail commissary. *Id*.

Plaintiff's reply argues that the means Defendants assert an inmate may receive its publications are inadequate because the inmate would not obtain the materials until release. ECF No. 62, p. 3-4. Plaintiff also contests the assertion that it could purchase the material for inmates because its publications are not for sale in the UCDC commissary. *Id*. Plaintiff also notes that the new kiosks and tablets used by the jail do not alter the fact that books, magazines, and newspapers are all still rejected by the UCDC. *Id*. at p. 4.

A court must consider if a prison regulation permits an alternative means for exercising First Amendment rights. *Turner*, 482 U.S. at 89-90. "In considering this factor, 'the right' in question must be viewed sensibly and expansively." *Murchinson v. Rogers*, 779 F.3d 882, 891 (8th Cir. 2015) (quoting *Thornburgh*, 490 U.S. at 417). "[W]hile alternative means of communication do not have to be 'ideal,' they do have to be 'available.'" *Human Rights Defense Center*, 999 F.3d at 1165 (quoting *Overton v. Bazzetta*, 539 U.S. 126, 135 (2003)). The expansive view of the right means that the adequate alternatives for the prohibited communications "need not be perfect substitutes for the curtailed right." *Prison Legal News v. Livingston*, 683 F.3d 201, 218 (5th Cir. 2012). If a prison regulation restricts some works sent by a publisher but the publisher remains free to send others, the remaining means of communication are strong indicators of a regulation's reasonableness. *See id*. at 218-19; *see also Prison Legal News v. Sec'y, Florida Dep't of Corr.*, 890 F.3d 954, 972-73 (11th Cir. 2018) (holding that a restriction on certain types of publications from a publisher left alternate means of communication because there were other publications permitted from that publisher). "Were it shown that no alternative means of

11

communication existed, though it would not be conclusive, it would be some evidence that the regulations were unreasonable." *Overton*, 539 U.S. at 135.

The Court finds that Plaintiff has failed to demonstrate that there is no genuine dispute as to this factor. The most significant issue the Court finds with Plaintiff's assertion of a total restriction of its publications is the undisputed fact that the ACT 309 inmates within the UCDC are permitted to receive books, magazines, and newspapers. ECF No. 56, ¶ 68; ECF No. 56-1, p. 61-62; ECF No. 56-4, p. 108. This indicates that there are some inmates within the UCDC that are permitted to receive many of the materials that Plaintiff publishes, which creates a genuine question as to whether the UCDC has completely restricted Plaintiff's First Amendment right to have inmates receive any of its publications. *See Prison Legal News*, 890 F.3d at 972-73. Plaintiff has not provided any rationale for why its First Amendment rights depend upon all inmates within the UCDC being able to receive its publications. Also, the deposition of Defendant Kugler indicates that letters are now permitted to be received by inmates in a scanned electronic form. ECF No. 56-4, p. 108. Noting that the right to communicate with inmates should be viewed expansively and that the alternatives need not be perfect substitutes, the Court finds that the availability of letters as a form of communication also creates a genuine question of whether all of Plaintiff's means of communication have been curtailed by the UCDC's policies. *Human Rights Defense Center*, 999 F.3d at 1165; *Prison Legal News*, 683 F.3d at 218. Accordingly, the Court finds that Plaintiff has failed to show that a reasonable fact finder could only conclude that all its means of communicating with UCDC inmates have been banned and that this factor weighs in favor of Plaintiff.

### 3. Costs of Accommodating

Plaintiff argues that permitting inmates to receive its publications would impose no significant burden on the time and resources of the UCDC and its staff. ECF No. 55, p. 8-9. Plaintiff contends that sorting its publications for inmates would have a minimum effect on the operation of the UCDC because the amount of mail it currently receives each day is very small. *Id*. at p. 9. Plaintiff notes that the UCDC is already sorting legal mail for all inmates, along with the publications that are sent to Act 309 inmates, and implies that the UCDC can similarly accommodate Plaintiff's publications with little added time. *Id*.

Defendants' response argues that permitting inmates to receive Plaintiff's publications would impose more than a minimal burden on the UCDC's operations. ECF No. 60, p. 8-9. Defendants note that depositions of the individual staff Defendants show that the amount of time that staff would have to dedicate to mail sorting would increase significantly. *Id*. at p. 9. Defendant contends that this is a logical conclusion because each page of Plaintiff's publications would need to be scanned into the electronic system, and because eliminating current restrictions would permit a far greater range of materials to be sent to the UCDC that would also need to be handled and converted into an electronic form. *Id*. In reply, Plaintiff tersely argues that constitutional rights cannot be ignored because they use up resources. ECF No. 62, p. 4.

The third factor considers "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." *Turner*, 482 U.S. at 90. "When accommodation of an asserted right will have a significant 'ripple effect' on fellow inmates or on prison staff, courts should be particularly deferential to the informed discretion of corrections officials." *Id*.

The Court finds that Plaintiff has failed to show that there is no genuine dispute as to whether this factor weighs in its favor. Defendant Roberts has stated that handling and converting Plaintiff's publications into an electronic format is impractical and would absorb significant time because of the length of the publications. ECF No. 60-3, p. 49. Also, while Plaintiff asserts that the time necessary for sorting and scanning its publications will not be significant, Plaintiff never addresses or acknowledges what the overall impact eliminating the current restrictions would have relative to other publications that the UCDC would then need to accept. Expanding the materials that are permissible to be sent to inmates could significantly increase the amount of time that UCDC staff must dedicate to incoming mail and away from "other duties related to security and inmate welfare." *Simpson*, 879 F.3d at 281 (finding that requiring a jail to abandon a postcard-only incoming mail policy could have a significant downstream impact on the inmates and jail staff). Accordingly, the Court finds that Plaintiff has failed to show that a reasonable fact finder could only conclude that accommodation of its asserted right would have little impact on UCDC resources.

**4. Ready Alternatives**

Plaintiff argues that there are obvious and easy alternative to the UCDC's current mail policies that could fully accommodate its asserted First Amendment rights. ECF No. 55, p. 9-10. Plaintiff reiterates its prior arguments to support its analysis of this factor, contending that the UCDC would not be burdened by simply allowing Plaintiff's publications to be received and then distributing them to the addressed inmate after sorting and inspection. *Id*. at p. 9. In response, Defendants argue that concerns about contraband and the resources necessary to accommodate additional publications from Plaintiff and other publishers indicate that allowing Plaintiff's request would have more than a minimal cost to penological interests. ECF No. 60, p. 9-10. In reply,

14

Plaintiff argues that there are no genuine concerns regarding contraband from a publisher. ECF No. 62, p. 4.

The final factor "asks whether there are any ready alternatives to the policy." *Simpson*, 879 F.3d at 281. "[T]he absence of ready alternatives is evidence of the reasonableness of a prison regulation." *Turner*, 482 U.S. at 90. Alternatively, "the existence of obvious, easy alternatives may be evidence that the regulation is not reasonable, but is an 'exaggerated response' to prison concerns." *Id*. "[P]rison officials do not have to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint." *Id*. at 90-91. However, if a claimant is able to show that there is an alternative that accommodates their asserted right "at de minimis cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard." *Id*. at 91.

The Court finds that Plaintiff has failed to show that there is no genuine dispute as to whether this factor weighs in its favor. Plaintiff's argument seems to be a rehash of the argument it made regarding the impact that accommodating its asserted right would have on the UCDC staff and resources. Plaintiff asserts that the ready and easy alternative would be to not have any of the current categorical restrictions apply to publishers and to simply screen incoming mail for contraband. However, as previously determined for the third factor, the Court is not persuaded that there is no genuine dispute as to whether allowing materials from Plaintiff and other publishers is an "easy" alternative that would have only a minimum impact on the UCDC's resources. The theoretical amount of new material that may be sent to the UCDC precludes the Court from finding that Plaintiff has indisputably demonstrated that its proposed alternative is easy to accommodate at de minimus cost to the UCDC's interest in having its staff spend more time on other tasks necessary for its operation. *See Simpson* 879 F.3d at 281-82. Accordingly, the Court finds that

Plaintiff has failed to show that a reasonable fact finder could only conclude that Plaintiff's proposed alternative policy would further the cited penological interest without negatively impacting that penological interest.

### 5. Conclusion

Evaluating the evidence and making all inferences in the light most favorable to Defendants, the Court finds that Plaintiff has failed to show that there is no genuine dispute as to the material facts relevant for each factor that must be weighed when analyzing Plaintiff's First Amendment claim. *See Nitsche*, 446 F.3d at 845. Accordingly, the Court cannot conclude that Plaintiff is entitled to judgment as a matter of law for its First Amendment claim and must deny its request for summary judgment on this issue.

### B. Fourteenth Amendment Claim

Plaintiff argues that Defendants have clearly violated its right to procedural due process under the Fourteenth Amendment. ECF No. 55, p. 10-13. Plaintiff contends that Defendants violated that right when they failed to give Plaintiff notice as to why the publications it mailed to inmates at the UCDC were rejected and when they failed to offer Plaintiff an opportunity to appeal the rejections. *Id*. at p. 11-12. Plaintiff notes that a significant portion of the first wave of mailed materials were returned with no explanation or indication as to why that mailing was rejected. *Id*. In particular, Plaintiff notes that none of the returned magazines were marked with "Post Cards Only" as the letters and one of the books were. *Id*. Plaintiff argues that it would be logical to conclude that the magazines were returned for a different and unknowable reason. *Id*. at p.12 n.4. Plaintiff further notes that the second wave of mailings were not returned at all and no reason from the UCDC for their rejection was ever given. *Id*. at p. 12. Plaintiff also notes that Defendants never informed Plaintiff of any opportunity to appeal the rejections of its publications. *Id*. Plaintiff

16

concludes that Defendants' failure to provide notice of why its materials were rejected or offer an appeal of those rejections is indisputable and should lead the Court to find that Defendants violated Plaintiff's right to due process a matter of law. *Id*. at p. 12-13.

In response, Defendants argue that the factual record is too inconclusive to determine the amount of, if any, due process violations that occurred. ECF No. 60, p. 10-11. Defendants acknowledge that some notice was due to Plaintiff of why its mailings were rejected by the UCDC. *Id*. at p. 10. However, Defendants contend that the manner and extent of notice that was due in this matter needs further factual development because the current factual record cannot provide a clear answer. *Id*. at p. 11-12.

In reply, Plaintiff argues that there is no material fact in dispute regarding its due process claim. ECF No. 62, p. 5. Plaintiff points to Defendants' implicit admission that numerous mailings it sent to the UCDC were returned with no explicit indication of why they were rejected. *Id*. Plaintiff asserts that this indisputably shows that Defendants violated its right to due process by failing to give it notice as to why some of its materials were rejected. *Id*.

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Publishers have an established First Amendment liberty interest in accessing and communicating with inmates through their publications. *See Perry v. Sec'y, Fla. Dep't of Corr.*, 664 F.3d 1359, 1368 (11th Cir. 2011) (citing *Thornburgh*, 490 U.S. at 408). Procedural due process requires that a prison inform a publisher when its publication sent to an inmate is rejected by the prison and why it was rejected.[8] *See Human Rights Defense Center*, 999 F.3d at 1167. However, once notice has

---

[8] The Eighth Circuit has confirmed that the procedural due process protections owed to a publisher sending mass mailings should be examined under the general principles from *Mathews v. Eldridge*, 424 U.S. 319 (1976), and not

17

been sent as to why a publication has been rejected, there is no further requirement that the publisher receive notice from the prison for subsequent denials of an identical publication or for the denial of each individual copy of that publication. *See Prison Legal News*, 890 F.3d at 996 n.20 ("[Plaintiff] wants notice forms for all 70 copies, not just one notice for the [impounded] January issue. Due process does not demand that much."). When a notice of rejection functions to inform a publisher that its publication is not permitted under a general rule of applicability, subsequent denials of that publication do not require notice.[9] *See Prison Legal News*, 683 F.3d at 223-24.

The Court finds that Plaintiff has failed to show that there is no genuine dispute as to whether Defendants violated its right to procedural due process. In particular, the Court finds that there is a genuine factual question as to whether Plaintiff received adequate notice as to why each form of its initial mailings to the UCDC were rejected. All letters and one book that were returned from the first wave of mailings from the UCDC were marked with "Return to Sender" and "Reason: Postcards Only." This marking could reasonably be seen as providing Plaintiff with notice that all the letters and books were rejected because the UCDC only permitted postcards as incoming mail. If that notice was sufficiently informative, this could satisfy the demands of due process because only one notice per identical publication rejected under a rule of general applicability is required, and those rejections would serve as notice going forward that those publications will be rejected if sent to the UCDC. *See Human Rights Defense Center*, 999 F.3d at

---

the more specific standard for mail that originates from an inmate that was established in *Procunier v. Martinez*, 416 U.S. 396 (1974). *Human Rights Defense Center*, 999 F.3d at 1166-67.

[9] The court in *Prison Legal News v. Livingston* examined the notice required after the appeal of the plaintiff's rejected book became final. 683 F.3d at 221-24. That court determined that the final administrative ruling approving the individualized decision to bar the publication functioned to inform plaintiff that the rejected book would always be rejected and that no notice of future rejections was required. *Id*. at 223-24. However, that court implied that an initial rejection of a publication based upon an existing rule of general applicability might not even require notice of rejection because the rule cannot be appealed. *Id*. at 224 ("The right to receive notice exists only to effectuate the right to be heard, and therefore is inapplicable where a party has no right to participate in the decision-making process.").

1167; *Prison Legal News*, 890 F.3d at 996 n.20; *Prison Legal News*, 683 F.3d at 223-24. For the magazines, Plaintiff's argument that the lack of any reference to a postcard policy on those rejected mailings is sensible. However, the Court finds that it would have also been sensible to infer that the postcard-only reference on the other mailings would indicate that the magazines were rejected under the same general rule that applied to every form of returned mailing. Therefore, the Court finds that there is a genuine dispute as to whether Defendants provided Plaintiff with sufficient notice as to why its publications were rejected.

As to Plaintiff's argument that Defendants indisputably failed to provide them with an opportunity to appeal the rejection of its publications, the Court finds that there is currently too much uncertainty as to what appeal, if any, Defendants needed to provide to Plaintiff. The outcome of the due process claims from Plaintiff's Baxter County suit is informative here. In granting partial summary judgment to the defendant in that matter, Judge Brooks found that "the creation of a formal appeal process to challenge the rejection of a mailing because it does not comport with the postcard-only requirement is unwarranted" and that an appeal would be "futile given that the mailings were indisputably not postcards." Baxter: ECF No. 89, p. 23-24. The Eighth Circuit affirmed this finding on appeal and endorsed the legal analysis Judge Brooks used to reach his conclusion. *Human Rights Defense Center*, 999 F.3d at 1166-68. The Eighth Circuit also affirmed that the only due process violations committed by that defendant were the failures to give notice as to why the different forms of Plaintiff's initial mailings were rejected. *Id*. at 1167-68. Plaintiff has not provided any reason to depart from the Eighth Circuit's determination that a formal appeal process of a very similar general rule is not warranted under procedural due process. The Eighth Circuit seemed to imply that the only formal appeal of the rejections suitable for Plaintiff would be their current First Amendment challenge to the UCDC's similar mail policy. *Id*. at 1167

19

("[Plaintiff] challenged the validity of the postcard-only policy under *Turner*, not whether its mailings were wrongly rejected if the policy is valid. No formal appeal process was needed to bring that challenge to the district court."). Accordingly, the Court finds that Plaintiff has failed to show that there is no genuine dispute as to whether Defendants deprived Plaintiff of a due process right to appeal the rejection of its publications.

Evaluating the record in the light most favorable to Defendants, the Court finds that Plaintiff has failed to show that there is no genuine dispute as to whether Defendants deprived Plaintiff of procedural due process. *See Nitsche*, 446 F.3d at 845. Accordingly, the Court cannot conclude that Plaintiff is entitled to judgment as a matter of law for its Fourteenth Amendment claim and must deny Plaintiff's request for summary judgment on this issue.

## IV. CONCLUSION

For the reasons stated above, the Court finds that Plaintiff's Motion for Summary Judgment (ECF No. 54) should be and hereby is **DENIED**.

**IT IS SO ORDERED**, this 4th day of November, 2022.

/s/ Susan O. Hickey
Susan O. Hickey
Chief United States District Judge