IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

HUMAN RIGHTS DEFENSE CENTER                                        PLAINTIFF

v.                          Case No. 1:17-cv-1064

UNION COUNTY, ARKANSAS, *et al.*                                  DEFENDANTS

## ORDER

Before the Court is Plaintiff Human Rights Defense Center's Renewed Motion for Judgment as a Matter of Law. ECF No. 108. Defendants have responded. ECF Nos. 112 and 113. The Court finds the matter ripe for consideration.

## I. BACKGROUND

Plaintiff Human Rights Defense Center ("HRDC") is a non-profit organization that seeks to educate the general public and imprisoned individuals on various topics related to the prison system. In this effort, Plaintiff creates and distributes multiple publications, such as the magazines *Prison Legal News* and *Criminal Legal News*, as well as legal self-help books such as *The Habeas Citebook: Ineffective Assistance of Counsel*. Plaintiff has delivered its publications to correctional facilities in every state.

Plaintiff filed its complaint against Defendants on October 30, 2017. ECF No. 1. Plaintiff brought two claims pursuant to 42 U.S.C. § 1983. *Id.* at p. 9-11. Plaintiff's first claim alleges that Defendants violated its First Amendment right when they rejected Plaintiff's publications mailed on June 23, 2017, to detainees at the Union County Detention Center ("UCDC") pursuant to a policy limiting non-legal mail to postcards. *Id.* at p. 9-10. Plaintiff's second claim alleges that Defendants violated Plaintiff's right to due process under the Fourteenth Amendment by failing to give Plaintiff adequate notice as to why its publications were rejected and failing to give Plaintiff

an opportunity to appeal the rejections. *Id.* at p. 10-11.  Plaintiff sought declaratory and injunctive relief, along with nominal, compensatory, and punitive damages, and attorney's fees and costs. *Id.* at p. 11. Plaintiff brought its claims against Defendants in their individual and official capacities. The individual capacity claims against Defendants were later dismissed with prejudice. ECF No. 33.

Prior to this action, on August 21, 2017, Plaintiff filed a similar action in this Court's Harrison Division against Baxter County, Arkansas regarding the mail policies at the Baxter County Detention Center ("BCDC").[1] United States District Judge Timothy L. Brooks granted partial summary judgment to Plaintiff and Baxter County regarding Plaintiff's due process claim but denied summary judgment regarding the First Amendment claim. (Baxter: ECF No. 89).  After a bench trial which addressed the merits of Plaintiff's First Amendment claim (Baxter: ECF Nos. 95, 95, 96), Judge Brooks dismissed the Baxter County action with prejudice (Baxter ECF Nos. 104, 105).  Plaintiff filed an appeal of Judge Brooks' dismissal and final judgment (Baxter: ECF No. 109), which the Eighth Circuit agreed to hear (Baxter: ECF No. 111).  On May 30, 2019, the parties in the instant action filed a Joint Motion to Stay, arguing that the resolution of the appeal and issues in the Baxter County action could significantly impact the instant action. ECF No. 42. The Court subsequently granted the parties' motion to stay, with the directive that the parties file a motion to reopen the case within ten days of the Eighth Circuit's ruling in the Baxter County action. ECF No. 43.

On June 8, 2021, the Eighth Circuit held that Judge Brooks erred in not making a factual determination on whether the BCDC's policy resulted in a "de facto" ban on prisoners receiving Plaintiff's publications. *Human Rights Defense Center v. Baxter County Arkansas*, 999 F.3d 1160,

---

[1] *See Human Rights Def. Ctr. V. Baxter Cnty., Ark.* (W.D. Ark. Case No. 3:17-cv-3070-TLB).  Further references to the docket in the Baxter County action will be referenced as "Baxter: ECF No. __."

1165-66 (8th Cir. 2021). The dismissal of Plaintiff's First Amendment claim was vacated and remanded for further proceedings on the issue of whether the BCDC's policy constituted a de facto ban on prisoners receiving Plaintiff's publication. *Id*. at 1166. The Eighth Circuit also fully affirmed Judge Brooks' holding regarding Plaintiff's Fourteenth Amendment procedural due process claim, which held that Plaintiff should have been informed of why its mailings were rejected but that due process did not require that an appeal of the rejections be available. *Id*. at 1167-68. The instant action was re-opened on September 14, 2021. ECF No. 45. On July 5, 2022, Plaintiff filed a motion for summary judgment. ECF No. 54. The Court denied summary judgment, holding that genuine disputes of material fact existed for each of Plaintiff's claims. ECF No. 80.

The jury trial in this matter commenced on March 6, 2023, and ended on March 8, 2023. ECF Nos. 95, 99, 101. During trial, Plaintiff called four witnesses: founder of HRDC Paul Wright, Plaintiff's expert John L. Clark, Defendant Sheriff Ricky Roberts, and Defendant Robert Mitcham. ECF No. 105. After Plaintiff rested its case, Defendants moved for judgment as a matter of law regarding both of Plaintiff's claims, with Plaintiff responding in opposition. ECF No. 99. The Court denied the motion for judgment as a matter of law regarding the First Amendment claim but granted in part the motion for judgment as a matter of law regarding the Fourteenth Amendment claim.[2] *Id*. Defendants rested without presenting a case in chief. ECF No. 101. Plaintiff then moved for judgment as a matter of law for both claims prior to submitting the claims to the jury, arguing that the evidence presented at trial could only lead a reasonable fact finder to reach a

---

[2] Following the Eighth Circuit's holding that affirmed Judge Brooks' ruling in the Baxter County matter, the Court determined that due process did not entitle Plaintiff to an opportunity to appeal the rejections of its publications under a rule of general applicability. *See Human Rights Defense Center*, 999 F.3d at 1167-68. This determination is reflected in the jury instructions regarding Plaintiff's Fourteenth Amendment claim, which stated that due process only required that Plaintiff receive notice of the rejections of its mailings and why the rejections occurred. ECF No. 104, p. 14.

3

verdict in favor of Plaintiff. *Id*. The Court denied Plaintiff's motion, determining that sufficient evidence had been presented to permit the jury to reach a conclusion for either Plaintiff or Defendants for both claims. *Id*. After deliberation, the jury returned a verdict in favor of Defendants for both claims. *Id*. Plaintiff then moved for a Judgment Notwithstanding the Verdict, which the Court denied. *Id*.

On April 5, 2023, Plaintiff filed its Renewed Motion for Judgment as a Matter of Law pursuant to Federal Rule of Civil Procedure 50(b). ECF No. 108. Plaintiffs renew their prior argument that the evidence presented at trial could only result in a reasonable fact finder returning a verdict in its favor.[3] ECF No. 109. Defendants responded in opposition, arguing that sufficient evidence was presented to support the jury's verdict. ECF Nos. 112 and 113.

## II. STANDARD OF REVIEW

"A motion for judgment as a matter of law may be made at any time before the case is submitted to the jury. The motion must specify the judgment sought and the law and facts that entitle the movant to the judgment." Fed. R. Civ. P. 50(a)(2). "If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 28 days after the entry of judgment . . . the movant may file a renewed motion for judgment as a matter of law[.]" Fed. R. Civ. P. 50(b). "In ruling on the renewed motion, the court may: allow judgment on the verdict, if the jury returned a verdict; order a new trial; or direct the entry of judgment as a matter of law." Fed. R. Civ. P. 50(b)(1)-(3).

---

[3] The Court is satisfied that the basis of the instant motion is the same as Plaintiff's prior Motion for Judgment as a Matter of Law submitted before closing arguments. Accordingly, the Court finds that Plaintiff is not introducing novel arguments or theories that are improper for a Rule 50(b) motion. *See Klingenberg v. Vulcan Ladder, USA, LLC*, 936 F.3d 824, 834 (8th Cir. 2019).

"The law places a high standard on overturning a jury verdict." *Hathaway v. Runyon*, 132 F.3d 1214, 1220 (8th Cir. 1997).[4] The high standard results from concerns that "the jury's rightful province will be invaded when judgment as a matter of law is misused." *Hunt v. Neb. Pub. Power Dist.*, 282 F.3d 1021, 1029 (8th Cir. 2002). "We ask whether sufficient evidence supports the jury's verdict, viewing the evidence in the light most favorable to the party who prevailed at trial." *Minnesota Supply Co. v. Raymond Corp.*, 472 F.3d 524, 536 (8th Cir. 2006). "If the evidence viewed according to this standard would permit reasonable jurors to differ in the conclusions they draw, judgment as a matter of law cannot be granted." *Hinz v. Neuroscience, Inc.*, 538 F.3d 979, 984 (8th Cir. 2008). "Where conflicting inferences reasonably can be drawn from the evidence, it is the role of the jury, not the court, to determine which inference shall be drawn." *Hunt*, 282 F.3d at 1029. Granting a motion for judgment as a matter of law is only appropriate when "all the evidence points in one direction and is susceptible to no reasonable interpretation supporting the jury verdict." *Mears v. Nationwide Mut. Ins. Co.*, 91 F.3d 1118, 1122 (8th Cir. 1996).

### III. DISCUSSION

**A. First Amendment Claim**

Plaintiff argues that the evidence presented at trial entitles them to judgment as a matter of law for its First Amendment claim. ECF No. 109, p. 2-9. Plaintiff contends that the evidence presented can only be seen as weighing in its favor for every factor used to analyze restrictions on communications with inmates. As to the threshold consideration, Plaintiff argues that the evidence only supports finding that Defendants' policy of restricting incoming non-legal mail to postcards for most prisoners was arbitrary and not rationally related to a legitimate penological interest.

---

[4] "The question of whether there is sufficient evidence to support a jury verdict is a legal one[.]" *Hathaway*, 132 F.3d at 1220. Therefore, the same standard of review that applies when a district court evaluates a motion for judgment as a matter of law applies when an appeals court reviews a district court's order on a motion for judgment as a matter of law. *See Belk v. City of Eldon*, 228 F.3d 872, 877 (8th Cir. 2000).

Plaintiff contends that the evidence demonstrated that the policy was neither logically connected to nor furthered legitimate interests such as reducing contraband introduced into the UCDC, reducing fire hazards in the UCDC, or increasing the efficiency of the UCDC.  In support, Plaintiff highlights the testimony at trial showing that Defendants do not have a legitimate concern of contraband from publishers, that the materials sold in the UCDC commissary indicates that limiting paper for fire hazards is not a genuine concern, and that little time would be spent searching and handling HRDC publications.

Plaintiff further argues that even if the evidence was sufficient to find that Defendants' policy was rationally related to any of those interests, the evidence cannot support a finding that the policy was reasonable under the remaining considerations.  Plaintiff contends that the evidence shows that there were no alternative means to get their publications to prisoners because testimony indicated that no publications of any kind could have made its way to the prisoners to whom Plaintiff mailed its materials in 2017.  Plaintiff also contends that accommodating the types of publications they sent would not have an impact on prison personnel or on prison resources because testimony showed that the time necessary to handle and search their publications is minimal.  Lastly, Plaintiff contends that that testimony showed Defendants completely failed to consider ready alternatives to their blanket policy that would not have more than a de minimis cost to their asserted penological interests.  Therefore, Plaintiffs conclude that the evidence at trial could only lead a reasonable jury to find that Defendants' policy was indisputably unreasonable and clearly violated their First Amendment rights.

Defendants argue in response that there was sufficient evidence presented at trial to support the jury's finding that the policy limiting incoming non-legal mail to postcards was reasonable. ECF No. 112, p. 2-7.  First, Defendants contend that the evidence at trial showing the motivation

behind implementing the postcard-only policy and the reduction in contraband after its implementation clearly support a finding that the policy was rationally related to a legitimate penological interest. Defendants then contend that evidence presented indicates that Plaintiff could use postcards as an alternative means of communicating with inmates. Defendants also emphasize that testimony showed that Plaintiff completely failed to explore the possibility of alternatives means for having its publications reach inmates. Regarding the impact that accommodating Plaintiff's publications would have on UCDC operations, Defendants contend that testimony showed that the potential for multiple publishers sending in voluminous publications could seriously disrupt the already resource-starved UCDC. Defendants also note that testimony showed there were concerns that accommodating only Plaintiff's publications could put them at risk of content-based First Amendment challenges from other publishers. As to whether accommodating Plaintiff's publications would have more than a de minimis cost to valid penological interest, Defendants contend that testimony at trial showed that the introduction of potentially unlimited free paper to inmates in the UCDC could have a meaningful increase in the risk of fires.

Publishers have a legitimate First Amendment interest in communicating with prisoners and sending them their publications. *See Human Rights Defense Center*, 999 F.3d at 1164 (citing *Thornburgh v. Abbot*, 490 U.S. 401, 407-08 (1989)). However, a restriction on the right to communicate with inmates will be permitted if the regulation is "reasonably related to legitimate penological interests." *Thornburgh*, 490 U.S. at 409 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). The test for determining the reasonableness of a regulation on communication with inmates involves an analysis of four factors: 1) "there must be a 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it"; 2) "whether there are alternative means of exercising the right that remain open to prison inmates";

3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and 4) "the absence of ready alternatives." *Turner*, 482 U.S. at 89-91. An analysis of the four *Turner* factors is "a fact-intensive inquiry requiring careful examination of the policies and institutions at issue in each case." *Simpson v. Cnty. of Cape Girardeau, Missouri*, 879 F.3d 273, 282 (8th Cir. 2018).

The first factor requires determining "whether the governmental objective underlying the regulations at issue is legitimate and neutral, and that the regulations are rationally related to that objective." *Thornburgh*, 490 U.S. at 414. This factor is the threshold requirement that once satisfied allows a court to balance the remaining factors to determine a regulation's constitutionality. *See Sisney v. Kaemingk*, 15 F.4th 1181, 1190 (8th Cir. 2021). "[A] regulation cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational." *Turner*, 482 U.S. at 89-90. Prison officials do not need to show that there are previous incidents justifying the policy or that the policy will actually further the interest cited, only that a rational connection between the policy and the interest exists. *See Simpson*, 879 F.3d at 279 (citation omitted); *see also Sisney*, 15 F.4th at 1191 (officials only need to show that they reasonably believed that their policy would further the legitimate interest). Legitimate penological interests include furthering safety and security, *See Turner*, 482 U.S. at 91-92, as well as promoting time-saving and efficiency in jail operations, *See Simpson*, 879 F.3d at 280.

The second factor considers if a prison regulation permits an alternative means for exercising First Amendment rights. *Turner*, 482 U.S. at 89-90. "In considering this factor, 'the right' in question must be viewed sensibly and expansively." *Murchinson v. Rogers*, 779 F.3d 882, 891 (8th Cir. 2015) (quoting *Thornburgh*, 490 U.S. at 417). "[W]hile alternative means of

communication do not have to be 'ideal,' they do have to be 'available.'" *Human Rights Defense Center*, 999 F.3d at 1165 (quoting *Overton v. Bazzetta*, 539 U.S. 126, 135 (2003)). The expansive view of the right means that the adequate alternatives for the prohibited communications "need not be perfect substitutes for the curtailed right." *Prison Legal News v. Livingston*, 683 F.3d 201, 218 (5th Cir. 2012). If a prison regulation restricts some works sent by a publisher but the publisher remains free to send others, the remaining means of communication are strong indicators of a regulation's reasonableness. *See id.* at 218-19; *see also Prison Legal News v. Sec'y, Florida Dep't of Corr.*, 890 F.3d 954, 972-73 (11th Cir. 2018) (holding that a restriction on certain types of publications from a publisher left alternate means of communication because there were other publications permitted from that publisher). "Were it shown that no alternative means of communication existed, though it would not be conclusive, it would be some evidence that the regulations were unreasonable." *Overton*, 539 U.S. at 135.

The third factor considers "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." *Turner*, 482 U.S. at 90. "When accommodation of an asserted right will have a significant 'ripple effect' on fellow inmates or on prison staff, courts should be particularly deferential to the informed discretion of corrections officials." *Id*.

The final factor "asks whether there are any ready alternatives to the policy." *Simpson*, 879 F.3d at 281. "[T]he absence of ready alternatives is evidence of the reasonableness of a prison regulation." *Turner*, 482 U.S. at 90. Alternatively, "the existence of obvious, easy alternatives may be evidence that the regulation is not reasonable, but is an 'exaggerated response' to prison concerns." *Id*. "[P]rison officials do not have to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint." *Id*. at 90-91.

However, if a claimant is able to show that there is an alternative that accommodates their asserted right "at de minimis cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard." *Id*. at 91.

Viewing the evidence in the light most favorable to the verdict, the Court finds that there was sufficient evidence presented at trial to permit the jury to reach a verdict in favor of Defendants on Plaintiff's First Amendment claim.[5] As to the first *Turner* factor, the cited reasons of efficiency and safety for the postcard-only policy are recognized as legitimate penological interests. *See Simpson*, 879 F.3d at 280. Further, there was testimony at trial from Defendants explaining that the rationale for the postcard-only policy was to limit the opportunity for contraband to enter the prison and minimizing time spent on sorting and searching mail. The Court finds that this testimony was sufficient to permit a reasonable fact finder to conclude that the policy was not arbitrary and had a logical connection to its intended goal. *See Turner*, 482 U.S. at 89-90. Whether the postcard-only policy furthered those stated goals is not legally relevant for this factor. *See Simpson*, 879 F.3d at 279.

There was also sufficient evidence presented at trial to support the jury's finding that the balance of the three remaining *Turner* factors indicated the reasonableness of the postcard-only policy. For the second factor, testimony at trial showed that Act 309 Prisoners held at the UCDC were permitted to have and receive the types of publications Plaintiff sent directly to other prisoners. This evidence could support a finding that there were other "available" means by which Plaintiff could communicate with prisoners at the UCDC, just not with the particular prisoners

---

[5] The Court must note that the operative Complaint in this matter is the one filed October 30, 2017. ECF No. 1. Accordingly, the only claims the Court considers for the instant motion are those that address the rejection of Plaintiff's publications in 2017 under the UCDC policy limiting incoming non-legal mail to postcards for most prisoners. As such, the Court will only evaluate the evidence at trial relevant to those claims. Defendants' willingness during trial to indulge arguments and evidence regarding rejections and policy changes not relevant to the operative claims is a mystery.

Plaintiff chose. Regarding the third factor, Defendants provided testimony that they had legitimate concerns that permitting the types of publications sent by Plaintiff could result in a dramatic increase in the number of similar publications sent in from other sources and would result in a significant burden on prison resources in accommodating the additional publications. That testimony provides a sufficient basis to support a finding that accommodating Plaintiff's publications would have a significant impact on UCDC staff and operation. Similarly, Defendants provided testimony at trial that being required to accommodate the type of publications sent by Plaintiff would have a significant impact on their goal of reducing the amount of time staff spent handling incoming mail and limiting the amount of flammable materials within the UCDC. This testimony could support a finding that permitting the types of publications sent by Plaintiff would have greater than minimal impact on Defendants' interest in increasing efficiency and safety.

In sum, the Court finds that evaluating the evidence at trial in the light most favorable to the verdict indicates that there was sufficient evidence to permit a finding for Defendant regarding every *Turner* factor. Accordingly, the Court cannot conclude that the evidence presented at trial "points in one direction and is susceptible to no reasonable interpretation supporting the jury verdict" in favor of Defendant. *Mears*, 91 F.3d at 1122. Therefore, Plaintiff's request for judgment as a matter of law for its First Amendment claim must be denied.

### B. Fourteenth Amendment Claim

Plaintiff argues that the evidence presented at trial shows that it prevailed as a matter of law on its Fourteenth Amendment claim. ECF No. 109, p. 9. Plaintiff emphasizes that the evidence established it was undisputed that not every item returned from its initial mailing was labeled with an indication of why the mailings were rejected. Plaintiff further notes that some of its mailed letters that did have an indication for the rejection were simply labeled "post card only."

Plaintiff contends that this indisputably shows that Defendants failed to give sufficient notice of why the books, court opinions, and magazines it sent to the UCDC were rejected and that it should be granted judgment as a matter of law for this clear failure to give notice. Plaintiff then contends that the evidence at trial also indisputably showed that Plaintiff was never informed of any means by which to appeal the UCDC's rejection of its mailings and that there was not any appeal it could undertake.

Defendants argue that there was substantial evidence presented at trial to support the jury's verdict for this claim. ECF No. 112, p. 7-9. Defendants first note that exhibits of the returned mailings showed that some of the mailings were marked with the general reason for their rejection, which would similarly apply to every type of mailing sent by Plaintiff. Defendants then highlight that testimony from Paul Wright showed that Plaintiff knew of the UCDC's postcard-only policy before they sent their first mailings and that Plainitff chose to send the mailings to the UCDC because of the policy. Defendants contend that this evidence was clearly sufficient to show that Plaintiff's had notice of the reason that its publications were rejected both prior to and after mailing those publications.

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Publishers have an established First Amendment liberty interest in accessing and communicating with inmates through their publications. *See Perry v. Sec'y, Fla. Dep't of Corr.*, 664 F.3d 1359, 1368 (11th Cir. 2011) (citing *Thornburgh*, 490 U.S. at 408). Procedural due process requires that a prison inform a publisher when its publication sent to an inmate is rejected by the prison and why

it was rejected.[6] *See Human Rights Defense Center*, 999 F.3d at 1167. However, procedural due process does not require an opportunity to appeal a rejection of a publication under a rule of general applicability. *See id*. at 1167-68.

Viewing the evidence in the light most favorable to the verdict, the Court finds that there was sufficient evidence presented at trial to support the jury's verdict in Defendants' favor regarding Plaintiff's Fourteenth Amendment claim. As noted by Defendants, testimony at trial indicated that Plaintiff was aware of the UCDC's postcard-only policy prior to sending its mailings. Testimony further indicated that the potential for rejected mailings under that policy was part of the motivation for sending the publications to the UCDC. Also, the exhibits presented at trial showed that some of Plaintiff's mailings were labeled "post card only." Coupled with Plaintiff's prior knowledge of the postcard-only policy, this labeling provided sufficient evidence to find that Plaintiff was aware that its other non-postcard mailings were similarly rejected for not being postcards. Accordingly, the evidence presented at trial was not so wholly one-sided in favor of Plaintiff that the jury's verdict must be vacated in favor of Plaintiff. *See Mears*, 91 F.3d at 1122. Regarding the lack of an opportunity for Plaintiff to appeal the rejection of their mailings, the Court noted above that Eighth Circuit precedent has determined that no appeal is necessary for rejections of publications based upon a rule of general applicability. *See Human Rights Defense Center*, 999 F.3d at 1167-68. Therefore, Plaintiff's request for judgment as a matter of law for its Fourteenth Amendment claim must be denied.

---

[6] The Eighth Circuit has confirmed that the procedural due process protections owed to a publisher sending mass mailings should be examined under the general principles from *Mathews v. Eldridge*, 424 U.S. 319 (1976), and not the more specific standard for mail that originates from an inmate that was established in *Procunier v. Martinez*, 416 U.S. 396 (1974). *See Human Rights Defense Center*, 999 F.3d at 1166-67.

## IV. CONCLUSION

For the reasons stated above, the Court finds that Plaintiff's Renewed Motion for Judgment as a Matter of Law (ECF No. 108) pursuant to Federal Rule of Civil Procedure 50(b) should be and hereby is **DENIED**. The jury's March 8, 2023 verdict in favor of Defendants remains.

**IT IS SO ORDERED**, this 1st day of May, 2023.

/s/ Susan O. Hickey
Susan O. Hickey
Chief United States District Judge